ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
OCT - 2 2006
U.S. COURT OF FEDERAL CLAIMS

FIRST SEALORD SURETY
789 EAST LANCASTER AVENUE
VILLANOVA, PA 19085,

Plaintiff

v.

THE UNITED STATES OF AMERICA,
Defendant

Docket No.: 06-687 C

**COMPLAINT OF FIRST SEALORD SURETY, INC.**
**FOR THE RELEASE OF FUNDS**

Plaintiff, First Sealord Surety, Inc., hereby avers as follows:

## I. BACKGROUND

1. Plaintiff is First Sealord Surety, Inc. ("Sealord"), with principal offices located at the above captioned address.

2. Defendant, The United States of America ("United States") is this country's government having its principal offices located in Washington, D.C.

3. Job Shops Company ("Job Shops"), who is not named as a party to this litigation, entered into a contract with The United States Department of the Navy ("Navy"), to provide certain construction work (the "Project") under contract number N68950-03-C-0027 (the "Contract").

4. Job Shops entered into a General Indemnity Agreement with Sealord, and on October 13, 2003, Sealord issued a performance and payment bond (the "Bonds") securing Jobs Shops' obligations under the Contract. A true and correct copy of the General Indemnity Agreement and the Bonds have been attached collectively as Exhibit "A."

5. Ultimately Job Shops was unable to fulfill its obligations under the Contract, and Sealord, pursuant to the General Indemnity Agreement and the bonds, made payment to a number of subcontractors.

6. Sealord provided proof of these payments to the Navy.

7. In the course of completing the Contract, Sealord paid $153,725.03 to Job Shops' labor and material suppliers and subcontractors whose materials and/or labor were used on or incorporated into the Project.

8. The Project has long been completed to the satisfaction of the Navy and Sealord's duties and obligations have been deemed fully performed.

9. All labor and material suppliers and subcontractors whose materials and/or labor were used on or incorporated into the Project have been paid in full.

10. A balance of $71,216.86 in contract funds (the "Funds") remains in the Navy's account which is due and owing to Sealord.

11. No other entity, labor and material supplier, or subcontractor whose materials and/or labor were used on or incorporated into the Project has made a demand or has claimed an interest in the balance of the Funds retained by the Navy.

## II. JURISDICTION

12. The United States Court of Federal Claims has jurisdiction over this matter pursuant to The Contract Disputes Act ("CDA"), Pub.L. No. 95-563, 92 Stat. 2383 (1978) (codified at 41 U.S.C. §§ 601-613), which has been incorporated into the Tucker Act. *See* 28 U.S.C. § 1491(a)(2).

## III. COUNT ONE – EQUITABLE SUBROGATION

13. A payment bond surety is entitled to be reimbursed for the payment of subcontractor claims out of funds owed the contractor and retained by the United States at completion of the contract. A surety is subrogated to both the subcontractors' right to be paid out of such funds and the contractor's right to the funds had its subcontractors been paid. United States Fidelity and Guaranty Co. v. United States, 475 F.2d 1377, 1381-1382 (Ct.Cl.1973); and Pearlman v. Reliance Insurance Co., 371 U.S. 132 (1962).

14. By performing its obligations under the payment bond, Sealord is undoubtedly entitled to receive the remaining contract funds of $71,216.86 plus any interest that has accumulated since that date.

15. Sealord has made demand upon the Navy for the balance of the Funds due and owing.

16. The Navy is entitled and empowered to release the Funds.

17. The Navy is not contesting the validity of Sealord's claim or Sealord's entitlement to the remainder of the Funds and has agreed to enter into a stipulation for the release of the funds to Sealord.

18. However, the Navy has failed and refused to release said Funds despite its prompt payment requirements under 31 USC § 3901 and the passing of more than 14 days.

19. The Navy incorrectly believes that it cannot release the Funds without a judicial determination subject to 48 C.F.R sect. 28.106-7.

20. Sealord has explicit rights to the contract balance which are enforceable by this Court.

21. As a result of the Navy's failure to release the Funds, Sealord has been forced to file this unnecessary and time-consuming action in the Court of Federal Claims for a routine matter.

WHEREFORE, Sealord prays for release of the funds being held by the Navy in the amount of $71,216.86 plus interest, costs, attorney's fees, and any other relief this Court deems appropriate.

Respectfully submitted,

FIRST SEALORD SURETY, INC.

Dated: 9/26/06

BY: ______________________

SALIL P. PATEL, ESQUIRE
Attorney for Plaintiff,
First Sealord Surety, Inc.
789 East Lancaster Avenue
Villanova, PA 19085
(610) 660-5135
(610) 664-2297
spatel@firstsealord.biz

# EXHIBIT "A"

Job Shops Company: #19792

# FIRST SEALORD SURETY, INC.

Principal Office
33 Rock Hill Road
Bala Cynwyd, PA 19004

## GENERAL INDEMNITY AGREEMENT

This General Indemnity Agreement (hereinafter referred to as "Agreement") made by and among First Sealord Surety, Inc., their successors and assigns (hereinafter called "Surety"), and each person, organization and entity executing this Agreement under the designation Indemnitor (together with any other person or entity that shall hereafter become a party to this Agreement as an indemnitor, individually and collectively referred to as "Indemnitors").

WITNESSETH

WHEREAS, one or more of the Indemnitors, in connection with the performance of contracts and the fulfillment of obligations generally, whether solely in its own name or as a co-venturer with others (hereinafter referred to as the "Principal" and also designated as such below), has heretofore been required or may in the future be required to give or procure certain contracts of suretyship, guaranty, or indemnity or other writings obligatory in nature, including continuations, extensions, alterations, renewals or substitutions thereof (hereinafter referred to as "Bond" or "Bonds") or Indemnitors may request Surety to refrain from canceling said Bonds; and

WHEREAS, Surety, at the request of the Principal and because of the promises of the Indemnitors to execute this Agreement and the promises which are made by the Indemnitors in this Agreement, has executed or procured to be executed, and may from time to time hereafter execute or procure to be executed, Bonds on behalf of the Principal.

NOW THEREFORE, in consideration of these premises, and the execution of any such Bond or Bonds whether executed before, simultaneously with or after the execution of this Agreement, the Indemnitors for themselves, their heirs, executors, administrators, present and future parent companies, subsidiaries and affiliates, successors and assigns, jointly and severally, agree with Surety, its successors and assigns, as follows:

1. Waiver of Notice. This is a continuing Agreement which remains, unless canceled in accordance with the provisions hereof, in full force and effect as to all Indemnitors with respect to each and every Bond issued by Surety. This Agreement shall be liberally construed so as to protect and indemnify Surety and any company that Surety may procure to execute any Bond or that may join with Surety as co-surety or be or become reinsurer on any Bond, any of whom shall be deemed to have a direct right of action under this Agreement against the Indemnitors. Indemnitors waive notice of the execution of any Bond or any continuation, extension, modification, renewal or substitution thereof. Indemnitors waive notice of any default or any other event that may give rise to liability under any Bond or under this Agreement. This Agreement applies to any Bond executed prior to, contemporaneously with, or after the execution of this Agreement.

2. Acceptance of Request by Authorized Agent. Surety's acceptance, whether before, simultaneously with or after the execution of this Agreement, of the request, written or otherwise, from a representative who is believed by Surety in good faith to be an authorized agent of the Principal shall in each instance bring within the provisions of this Agreement any Bond issued by Surety pursuant to such request.

3. Declination of Bond Execution. Nothing in this Agreement or otherwise shall obligate Surety to execute any Bond. Surety may decline, in its sole discretion, to execute any Bond for which request is made without incurring any liability to and without affecting the obligations of the Indemnitors with respect to any other Bond or Bonds. Notwithstanding that Surety may have executed a bid or proposal bond in connection with any proposed contract, Surety shall have the right, in its sole discretion, to decline to execute any performance, payment or other bond that may have been required in connection with the award of such contract without incurring any liability to the Indemnitors and without affecting the obligations of the Indemnitors with respect to the bid or proposal bond and the Indemnitors agree that they shall make no claim against Surety for declining to execute any such bond.

4. Premiums. The Indemnitors will pay to Surety, or its designated or appointed agent, the premiums or charges of Surety for each Bond or other instrument issued, and shall, where the premium or charge is annual, continue to pay same until Surety has received written evidence satisfactory to it in its sole

discretion of its discharge or release from all liability on the Bond and in connection with all matters related thereto. Indemnitors agree that upon issuance of the Bond by Surety, the bond premium is due in full and fully earned. If for any reason the price of any contract upon which a Bond is issued is increased, or additional work is performed under the contract for an additional charge, the Indemnitors will pay Surety additional premium(s) at rates then in effect. Any increase in the price of any contract upon which a Bond is issued, or any increase in the amount of any Bond, whether or not notice thereof is given to Indemnitors, shall not operate to discharge the obligations of Indemnitors hereunder to Surety.

5. Payment of Surety Fees. Indemnitors shall pay all charges and fees incurred by the Surety, its shareholders, directors, officers, partners, employees, agents, subsidiaries, affiliates and divisions (and any surety that Surety procures to execute any Bond and any other surety with which Surety may act as co-surety on any Bond or other instrument) under any agreement to which any Indemnitor is a party.

6. Indemnification. The Indemnitors hereby jointly and severally covenant, promise and agree to exonerate, indemnify, defend and hold harmless Surety, its shareholders, directors, officers, partners, employees, agents, subsidiaries, affiliates and divisions (and any surety that Surety procures to execute any Bond and any other surety with which Surety may act as co-surety on any Bond or other instrument) from and against any and all liability, loss, cost, damage and expense of whatsoever kind or nature (including, but not limited to, interest, court costs and counsel, attorneys, consulting, accounting and other professional and trade fees, whether incurred on a flat fee per claim, percentage, time and material, hourly or other basis, including the cost of in-house professionals) which Surety may sustain, incur, be put to or to which it may be exposed (i) by reason of having executed any Bond or other instrument or any renewal, modification, continuation, substitution or extension thereof, (ii) by reason of the failure of the Principal or any of the other Indemnitors to perform or comply with the promises, covenants and conditions of this Agreement and any Bond executed by Surety, including any and all direct and indirect losses not sustained by Surety, or (iii) in enforcing any of the promises, covenants or conditions of this Agreement. Surety shall at all times have the right but not the obligation to retain the counsel of its choice to defend itself from any claim, lien, levy, liability, suit or judgment brought against Surety on any Bond or against any collateral security, contract funds, trust funds or liens held by the Surety or an obligee on any bonded project, including retainages, or to prosecute an action to preserve Surety's rights with respect to collateral security, contract funds, trust funds or liens held by the Surety or an obligee on any bonded project, including retainages. The cost of retaining such counsel shall be included within the Indemnitors' obligation to indemnify, exonerate and hold Surety harmless.

7. Collateral Demand. If Surety or any reinsurer shall establish a reserve to cover any liability, claim asserted, suit, award or judgment in connection with any Bond, or any loss, cost, expense or fee in connection therewith, the Indemnitors, immediately upon demand (the "Collateral Demand"), whether or not Surety shall have made any payment therefor and whether or not the collateral demanded may be in addition to other collateral security previously provided to Surety, shall provide Surety funds and/or other collateral security which Surety in its sole discretion deems adequate, equal in value to such reserve and any increase thereof as collateral security on such Bond. Such funds and any other property previously provided to Surety shall be deemed collateral security and shall be available to Surety for any indebtedness of the Indemnitors to Surety. Such collateral security shall be held subject to the terms of this Agreement. If the Indemnitors fail to provide Surety with sufficient collateral after a Collateral Demand, they shall be in default of this Agreement. Indemnitors agree that their failure to provide collateral as demanded by Surety shall constitute irreparable harm to Surety for which it has no adequate remedy at law, and that Surety may obtain injunctive relief compelling the delivery to Surety of sufficient collateral or, in the alternative, Surety may obtain a judgment against each or any of the Indemnitors for the amount of the Collateral Demand plus the costs of obtaining the judgment, including its attorney's fees, either by confession pursuant to paragraph 34 of this Agreement or by other legal or equitable process. Any Collateral Demand reduced to a judgment may be immediately executed upon, and any asset of an Indemnitor levied upon may either be held as collateral or liquidated in any manner deemed appropriate by Surety in its sole discretion, including private or judicial sale. The proceeds of such liquidated assets may be held by Surety as collateral, and applied to any of the Indemnitors' obligations to Surety arising under this Agreement or otherwise.

8. Liability of Indemnitors. The liability of the Indemnitors shall extend to and include the amount of all payments, together with interest thereon from the date of such payments, made by Surety under Surety's belief that (i) Surety was or might be liable therefor, or (ii) the payments were necessary or advisable to protect any of Surety's rights or to avoid or lessen Surety's liability or alleged liability. The vouchers or other evidence of such payments sworn to by a duly authorized representative of Surety shall be prima facie evidence of the fact and extent of the liability of the Indemnitors to Surety. The liability of the Indemnitors shall also extend to any loans or advances made by or guaranteed by Surety for the benefit of a Principal without any obligation on Surety's part to provide any financial assistance.

9. Interest. If the Indemnitors fail to remit any amount due to the Surety from the Indemnitors under the terms and conditions of this Agreement within thirty (30) days of the due date of such amount, the Indemnitors shall also pay to the Surety interest calculated at the rate of nine (9) percent interest per annum from the date such amount first became due, for the entire period in which the Indemnitors fail to remit said amount. In the event that the applicable interest rate set forth in any provision of this Agreement is determined to be in excess of the maximum legal rate, interest shall be calculated at the maximum legal rate. The portion of any interest payment made by the Indemnitors representing an amount in excess of the applicable maximum legal rate shall be deemed a payment of principal and applied against the principal amount due to the Surety. This Agreement shall not require the payment or permit the collection of interest or any late payment

charged in excess of the maximum rate permitted by law. If any excess of interest or late payment charge in such respect is provided for herein or shall be adjudicated to be so provided for, neither the Indemnitors, or their respective successors or assigns, shall be obligated to pay such interest or late payment charge in excess of the maximum amount permitted by law, and the right to demand payment of any such excess shall be and hereby is waived, and this provision shall control any other provision of this Agreement.

10. Settlements. Surety shall have the right, in its sole discretion, to adjust, settle or compromise any claim, demand, suit or judgment upon any of the Bonds procured or executed by it, and Surety's decision thereon shall be final and binding upon the Indemnitors. Surety shall have the right, in addition to all other rights and remedies available to it, without notice to the Indemnitors, to apply (i) any collateral security held by it under this Agreement, (ii) any collateral security held under any other agreement between it and any of the Indemnitors and (iii) any and all funds owing to Principal or any Indemnitor under any contract for which any Bond was procured to the satisfaction of or in reimbursement of Surety as a result of its satisfaction of any claim, demand, suit or judgment upon any of the Bonds procured or executed by it, and to the direct payment of or reimbursement to itself of interest, costs, expenses and counsel and other professional or consulting fees incurred by it as a result of its having executed or procured any Bond. Furthermore, Surety may consent to any change in a contract or plans and specifications relating thereto, and the Indemnitors shall remain bound under the terms of this Agreement even if the change substantially increases the Indemnitors' liability.

11. Assignments. The Indemnitors do hereby grant a lien and security interest in, assign, transfer, pledge and convey to Surety as collateral security to secure the obligations of the Indemnitors hereunder, under the Bonds and with respect to any other liability or indebtedness of the Indemnitors to Surety whether heretofore or hereinafter incurred:

(a) All rights of the Principal or Indemnitors in, or arising in any manner out of, any contract in which the Indemnitors or any of them may have an interest, whether or not bonded by Surety, and any extensions, modifications, changes, alterations or additions thereto, including, but not limited to, any and all claims and sums due or that may become due under any contract and the proceeds of any insurance policies payable to any of the Indemnitors;

(b) All subcontracts and purchase orders with the Principal or any Indemnitor and all rights, actions, causes of action, claims and demands of whatsoever kind which the Principal or any of the Indemnitors may have or acquire with respect to any contract or any subcontract or purchase order or any bonds given to the Principal or any Indemnitor by any subcontractor or vendor in connection with any contract;

(c) All right, title and interest of the Principal or Indemnitors in and to any contract, the work and all supplies, tools, plant, machinery, equipment and materials of whatsoever kind;

(d) All tangible and intangible personal property now owned or hereafter acquired by each of the Indemnitors, including without limitation, accounts, chattel paper, deposit accounts, documents, general intangibles, goods, instruments, investment property, letter of credit rights, motor vehicles, supporting obligations, all monies which at any time any Indemnitor shall have or have the right to have in its possession, all books and records relating to the foregoing, choses in action, and proceeds of collateral.

12. Events of Default. The rights provided to Surety under the assignments herein, and any and all other rights provided to Surety under this Agreement, may be exercised by Surety immediately upon the occurrence of any one or more of the following events or upon Surety's belief that any one or more of the following may occur:

(a) Any default, abandonment, forfeiture, breach, failure, refusal or inability to perform the terms and provisions of any contract with respect to which a Bond or other instrument has been executed by Surety;

(b) The failure, delay, refusal or inability of the Principal to pay bills or other indebtedness incurred in, or in connection with, the performance of any contract with respect to which a Bond or other instrument has been executed by Surety;

(c) The failure, refusal or inability of the Principal to satisfy and/or perform any of the conditions of any such Bond or other instrument executed by Surety;

(d) The failure to perform, or comply with, any of the promises, covenants and obligations of this Agreement;

(e) The failure to pay and discharge, when due, any other indebtedness of the Principal or any Indemnitor to Surety;

(f) Any assignment by the Principal or any Indemnitor for the benefit of creditors, any appointment or application for the appointment of a receiver or trustee, or any voluntary or involuntary filing of a petition under Title 11 of the United States Code as to any Principal or Indemnitor;

(g) Any proceeding which deprives the Principal of the use or interferes with the Principal's use of any supplies, tools, plant, machinery, equipment or materials required for the performance of any contract with respect to which Surety has issued any Bond;

(h) The Principal's or any Indemnitor's death, disappearance, incompetence, conviction of a felony, or imprisonment, if the Principal or any Indemnitor is an individual;

(i) The failure to pay any premium on any Bond;

(j) The failure of the Principal or any Indemnitor to comply with the underwriting requirements and/or contractor conditions of the Surety; or

(k) The assignment of rights to a third party unless upon written consent of the Surety.

13. Rights and Remedies. In the event the assignments in paragraph 11 of this Agreement become operative as provided in paragraph 12 above, in addition to any other remedies Surety may have, the Indemnitors authorize and empower Surety in its sole discretion and to the extent it deems appropriate, to proceed with any and all of the following:

(a) To assert, pursue, prosecute, compromise or settle in whole or in part at the Indemnitors' expense all of the rights, actions, causes of action, claims and demands assigned;

(b) To take possession of all or any part of the work (together with all associated supplies, tools, plant, machinery, equipment, materials, job books, records, drawings and plans), at the Indemnitors' expense, to complete all or any part of the work, or to relet or consent to the reletting or completion of the contract or contracts secured by any Bond;

(c) To take over any of the jobs for which any Bond has been provided;

(d) To demand from any obligee, either directly or on behalf of any of the Indemnitors and/or the Principal, to have job funds for any of the projects for which Bonds have been issued to be escrowed with the Surety or its designee;

(e) To notify any obligee of any and all of the rights of the Surety under this Agreement;

(f) To instruct any obligee to pay job funds directly to the Surety;

(g) To exercise any and all of the rights and remedies of a secured party under the Uniform Commercial Code, including the right to require the Indemnitors to assemble the collateral and make it available to Surety at a place reasonably convenient to the parties;

(h) To enforce the obligations of an account debtor or other person obligated on collateral, and exercise the rights of any Indemnitor with respect to the obligation of the account debtor or other person obligated on collateral to make payment or otherwise render performance to such Indemnitor, and to notify the account debtors or other person obligated on collateral that payments are to be made directly to Surety. The Indemnitors shall not compromise, discharge, extend the time for payment or otherwise grant any indulgence or allowance with respect to any account without the prior written consent of Surety; and

(i) Upon ten (10) calendar days' prior written notice to the Indemnitors, which the Indemnitors hereby acknowledge to be sufficient, commercially reasonable and proper, sell, lease or otherwise dispose of any or all of the collateral at any time and from time to time at public or private sale, with or without advertisement thereof, and apply the proceeds of any such sale first to Surety's expenses in preparing the collateral for sale (including reasonable attorneys' fees), second to the complete satisfaction of all obligations and liabilities of the Indemnitors to Surety, including rights to hold reserves, and third, as required by the Uniform Commercial Code. The Indemnitors waive the benefit of any marshalling doctrine with respect to Surety's exercise of its rights hereunder. The Indemnitors grant a royalty-free license to Surety for all patents, service marks, trademarks, tradenames, copyrights, computer programs and other intellectual property and proprietary rights, sufficient to permit Surety to exercise all rights granted to Surety under this paragraph.

14. Trust Funds. If any of the Bonds or other instruments is executed by Surety in connection with the performance of a contract, the entire contract price or other consideration to be received by the Principal, whether received as payments or loans, shall be dedicated to the satisfaction of the conditions of the Bond(s) or other instrument(s). All consideration, including all funds paid, due or to become due, and all securities, warrants, checks or other evidence of indebtedness and the proceeds thereof given upon or under any contract in connection with which Surety shall have issued a Bond shall be impressed with a trust in favor of laborers, materialmen, suppliers, subcontractors and Surety for the exclusive purpose of satisfying the conditions of the Bonds. Upon demand of Surety, Indemnitors shall cause all funds or the proceeds of all consideration received or to be received from any contract referred to in any Bond to be deposited into separate trust accounts with a bank or similar depository designated by Surety, and such accounts shall be controlled by an escrow agent or disbursing servicer to be designated by Surety. The Indemnitors shall be liable for the costs of establishing said accounts and for any fee charged by the escrow agent or disbursing servicer.

15. Attorney-in-Fact. The Indemnitors hereby irrevocably nominate, constitute, appoint and designate Surety as their attorney-in-fact with the right, but not the obligation, (i) to exercise all of the rights of the Principal and the Indemnitors assigned, transferred and conveyed to Surety under this Agreement, (ii) to notify any obligee of any and all of the rights of the Surety under this Agreement, (iii) to instruct any obligee to escrow job funds for any of the projects for which Bonds have been issued with the Surety or its designee; and (iv) in the name of the Principal or any other Indemnitor, to make, execute or endorse and deliver any and all additional or other assignments, vouchers, financing statements, mortgages, releases, satisfactions, checks, drafts, notes, certificates of deposit, letters of credit, deeds, bills of sale, authorizations (including an authorization on behalf of the Principal or any Indemnitor to release information), documents or papers, including any agreement under §49.404(e)(4) of the Federal Acquisition Regulation or any direction or authorization under 48 Code of Federal Regulations §28.106-7, deemed necessary and proper by Surety in order to give full effect not only of the intent and meaning of the within assignments, but also to the full protection intended to be given herein to Surety under all other provisions of this Agreement, the Bond(s) or otherwise, including but not limited to releases in favor of the Surety on behalf of the Principal and/or the Indemnitors. The Indemnitors hereby ratify and affirm all acts and actions taken and done by Surety as such attorney-in-fact. The Indemnitors hereby waive, release and forever discharge Surety and its past, present and future officers, directors, partners, employees, agents, representatives, shareholders, subsidiaries, affiliates, successors and assigns, if any, of and from

any and all actions and causes of action, claims, suits, demands, damages, attorneys' fees, costs and all other liabilities of any kind or description whatsoever, either in law or in equity, whether known or unknown, suspected or unsuspected, direct or indirect, which the Indemnitors had, now have, or hereinafter may have against Surety as a result of its having taken any action or done any thing as such attorney-in-fact or otherwise under this Agreement.

16. Suits. Separate suits or proceedings may be brought by Surety under this Agreement as causes of action accrue from time to time. Any suit or other proceeding brought by Surety, or the recovery of judgment upon any cause of action by Surety, shall not prejudice or bar other suits or proceedings by Surety upon other causes of action, whether theretofor or thereafter arising. Surety is hereby authorized to settle any of its claims against, or release or compromise any collateral security of the Principal or any one or more of the Indemnitors severally, and such settlement or release of collateral shall not affect the liability of any of the others to Surety, nor shall they be discharged in whole or in part by reason of the settlement or release in whole or in part of one or more of the Indemnitors or the Principal, of their obligations hereunder.

17. Surety's Rights and Remedies. Surety's rights under this Agreement are cumulative with, and in addition to, all other rights of Surety, however derived. Surety is not required to exhaust its rights or remedies against the Principal or Indemnitors, or to await receipt of any final dividends from the estate or legal representative of any Indemnitor or the receipt of proceeds from any assignment herein granted before asserting its rights hereunder or commencing any action or proceeding against any other Indemnitor.

18. Books and Records. Surety, at any time, shall have continuous and uninterrupted access to the books, records and accounts of the Indemnitors, and to all matters and information concerning any Bond(s) or instrument(s) executed by Surety, and the financial condition and assets of any Indemnitor until the liability of Surety under each and every Bond or other instrument executed by it, and each and every obligation of the Indemnitors under this Agreement is terminated and discharged to the satisfaction of Surety. Banks, depositories, materialmen, supply houses, obligees on the Bonds and all other persons and organizations are hereby authorized to furnish Surety, at its request, any information (including copies thereof) requested including, but not limited to, the status of work under contracts being performed by the Principal; the condition of the performance of such contracts and payments of such accounts. Indemnitors shall have a continuing obligation to provide current financial information to Surety until such time as all obligations of the Indemnitors hereunder have been discharged. Indemnitors warrant and represent that any financial information furnished by any Indemnitor to Surety is true and accurate and acknowledge that Surety has and will continue to rely upon such information in executing any Bond.

19. Non-assignment of Contract Funds. Principal and Indemnitors warrant that, with respect to any contract for which Surety has or may issue a Bond, undertaking or instrument, the Principal has not and shall not assign its rights to receive payments from such contract to any other person or entity without the prior express written consent of Surety signed by an officer of Surety (not by an attorney in fact). Indemnitors agree that any consent by Surety to such assignment shall not operate to discharge, diminish or lessen their obligations to Surety hereunder with respect to such contract. Indemnitors agree and acknowledge that if Principal assigned or does assign its right to receive payments to a third party without Surety's written consent, the Indemnitors shall upon Surety's demand, procure the discharge of Surety from the Bond of such assigned contract or the Indemnitors shall immediately deposit with Surety cash collateral equal to the penal sum of the Bond issued on such contract; if the Indemnitors do not procure the discharge of Surety or they do not deposit the requisite collateral with Surety, Surety may, in addition to any other remedy available, obtain a judgment against the Indemnitors for the penal sum of the Bond plus costs of suit and reasonable attorney's fees, in accordance with the power granted in paragraph 34 of this Agreement.

20. Homestead. The Indemnitors hereby waive, so far as their respective obligations under this Agreement are concerned, all rights to claim any of their property, including their respective homesteads, as exempt from levy, execution, sale or other legal process under the laws of the United States or any State, Territory or Possession. Indemnitors agree to provide immediate notice to Surety of any change of their domicile or principal place of business.

21. Notice of Breach or Suit. The Principal and Indemnitors will immediately notify Surety in writing at the principal office of First Sealord Surety, Inc., 33 Rock Hill Road, Bala Cynwyd, PA 19004, of: any breach of this Agreement; any suit, action or proceeding arising out of or relating to any Bond or other instrument executed by Surety on behalf of the Indemnitors or any one of them; or any notice or knowledge they receive that the liability insurance of a Principal has been or will be canceled, terminated or non-renewed for any reason or that such coverage will be reduced.

22. Cancellation and Termination. Any of the Indemnitors other than the Principal shall have the right at any time to request cancellation of this Agreement as to him by delivering written notice of such request to Surety at the principal office of First Sealord Surety, Inc., 33 Rock Hill Road, Bala Cynwyd, PA 19004, Attention: President and Corporate Counsel. Such cancellation shall not become effective until the earlier of thirty (30) days after Surety's actual receipt of such notice or the date of written acceptance thereof by Surety. Such cancellation, if subject to approval by the Company, shall not relieve such Indemnitor from liability for any Bond or other instrument executed by Surety prior to the date of such cancellation, nor shall it affect the future liability of the Indemnitors who do not request cancellation.

23. Invalidity. If for any reason this Agreement is invalid as to any Indemnitor, or if any Indemnitor's obligations or liability under this Agreement is terminated in the manner herein provided or otherwise by operation of law, the remaining Indemnitors shall nevertheless be bound hereunder, for the full amount of liability, losses and expenses which Surety may sustain or incur.

24. Uniform Commercial Code. Surety may at any time and from time to time, file this Agreement, financing statements, continuation statements and amendments thereto that describe the collateral in particular or as all assets of any of the Indemnitors, or words of similar effect, and which contain any other information required by the Uniform Commercial Code for the sufficiency or filing office acceptance of any financing statement, continuation statement or amendment, including whether the Indemnitor is an organization, the type of organization and any organization identification number issued to the Indemnitor. The Indemnitors agree to furnish any such information to Surety promptly upon request. Any such financing statements, continuation statements or amendments may be signed by Surety on behalf of the Indemnitors, and may be filed at any time in any jurisdiction whether or not Revised Article 9 of the Uniform Commercial Code is then in effect in that jurisdiction.

25. Investigation. The Indemnitors agree that Surety, at its sole discretion and at any time during the term of this Agreement, is permitted to conduct any and all investigations with respect to each Indemnitor, its owners, principals, shareholders, directors, officers, partners, employees, agents, subsidiaries, and divisions including, but not limited to, background, criminal, credit, asset, Internal Revenue Service, tax, and any other investigations Surety, at its sole discretion, deems appropriate, and the Indemnitors shall execute any and all further documents, authorizations and powers of attorney Surety deems necessary to conduct such investigations, including but not limited to IRS Form 4506 and IRS Form 2848.

26. Notification of Change in Information. Each Indemnitor shall notify Surety in writing of any change whatsoever in the ownership and/or structure of such Indemnitor's business, and such notification shall be served upon Surety no less than ten (10) days prior to any such change. Further, each Indemnitor shall immediately notify Surety in writing of any interest, of whatever kind or nature, such Indemnitor, its owners, shareholders, directors, officers, partners, employees, agents, subsidiaries, and divisions, and each of their respective heirs, successors, representatives and assigns currently possess or obtain subsequent to the execution of this Agreement with respect to any company conducting business as a surety and/or surety bond agent.

27. Affiliated Entities. Each Indemnitor shall cause all of its Affiliated Entities (as defined below) to become a party to this Agreement as an "Indemnitor". For purposes of this paragraph, Affiliated Entities means, with respect to a particular Indemnitor, existing and future entities controlling or controlled by such Indemnitor as well as entities in which such Indemnitor owns, directly or indirectly, at least twenty (20) percent of the ownership interest.

28. Governing Law; Venue. This Agreement shall be governed by, construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania without regard to its principles of conflicts of law. Any suit, action or proceeding brought by either party in a court of law against the other shall be brought in the federal or state courts located within the Commonwealth of Pennsylvania. The parties hereto agree that any suit, action or proceeding, whether claim or counterclaim, brought or instituted by any party hereto or any successor or assign of any party, on or with respect to this Agreement or the dealings of the parties with respect hereto, shall be tried only by a court and not by a jury. EACH PARTY HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY SUCH SUIT, ACTION OR PROCEEDING. Further, each Indemnitor waives any right it may have to claim or recover, in any suit, action or proceeding, any special, exemplary, punitive or consequential damages or any damages other than, or in addition to, actual damages.

29. Jurisdiction; Transfer of Judgment. The parties hereto acknowledge and submit to the jurisdiction of the state and federal courts located in the Commonwealth of Pennsylvania, and HEREBY FOREVER WAIVE ANY DEFENSE AS TO FORUM NON CONVENIENS OR THE LACK OF PERSONAL JURISDICTION OF THE STATE AND FEDERAL COURTS LOCATED IN THE COMMONWEALTH OF PENNSYLVANIA AND THE APPELLATE COURTS THEREOF, in any action arising out of, under, pursuant to or because of this Agreement. Should civil judgment, arising out of, under, pursuant to or because of this Agreement, be entered against any party hereto, such party hereby forever waives and discharges each and every legal and equitable defense they may have or have had to the transfer and entry of such judgment, without limitation, to any other commonwealth, state, territory, district, or holding of the United States of America as well as to any other country, anywhere in the world, including the Commonwealth of Canada.

30. Assignment. This agreement may be assigned by the Surety without the prior consent of any of the Indemnitors.

31. Severability. If any provision or provisions of this Agreement is held by a court of competent jurisdiction to be invalid or unenforceable, then such provision shall be deemed severable from this Agreement, and the remaining provisions hereof shall remain in full force and effect.

32. Titles and Headings. Titles and headings to sections herein are inserted for convenience of reference only and are not intended to be a part of or to affect the meaning or interpretation of this Agreement.

33. Modification of Agreement. The Indemnitors understand that this Agreement may not be changed or modified orally. No change or modification shall be effective unless made by written endorsement executed by Surety to form a part hereof.

34. CONFESSION OF JUDGMENT. WITHOUT LIMITING THE GENERALITY OF ANY OTHER PROVISION OF THIS AGREEMENT, THE UNDERSIGNED INDEMNITORS HEREBY JOINTLY AND SEVERALLY IRREVOCABLY AUTHORIZE AND EMPOWER ANY ATTORNEY OF RECORD OR PROTHONOTARY OR CLERK OF ANY COURT IN THE COMMONWEALTH OF PENNSYLVANIA OR ANY OTHER JURISDICTION TO APPEAR FOR ANY OR ALL OF THEM AT ANY TIME OR TIMES IN SUCH COURT WITH RESPECT TO ANY SUMS DUE UNDER THIS AGREEMENT, WITH OR WITHOUT DECLARATION FILED AS OF ANY TERM, AND TO CONFESS OR ENTER JUDGMENT AGAINST ANY OR ALL OF THEM FOR ALL SUCH SUMS

PAYABLE UNDER THIS AGREEMENT AS EVIDENCED BY AN AFFIDAVIT SIGNED BY AN AUTHORIZED REPRESENTATIVE OF SURETY SETTING FORTH SUCH AMOUNT DUE, PLUS REASONABLE ATTORNEY'S FEES, COST OF SUIT, INTEREST, WITH RELEASE OF PROCEDURAL ERRORS AND WITHOUT RIGHT OF APPEAL. IF A COPY OF THIS AGREEMENT, VERIFIED BY AFFIDAVIT, SHALL BE FILED, IT SHALL NOT BE NECESSARY TO FILE THE ORIGINAL AS A WARRANT OF ATTORNEY. THE UNDERSIGNED JOINTLY AND SEVERALLY WAIVE THE RIGHT OF ANY STAY OF EXECUTION AND THE BENEFIT OF ANY AND ALL EXEMPTIONS TO WHICH THEY MAY NOW OR MAY HEREAFTER BE ENTITLED UNDER LAW. NO SINGLE EXERCISE OF THE FOREGOING WARRANT AND POWER TO BRING AN ACTION OR CONFESS JUDGMENT SHALL BE DEEMED TO EXHAUST THE POWER, BUT THE POWER SHALL CONTINUE UNDIMINISHED AND MAY BE EXERCISED FROM TIME TO TIME AS OFTEN AS SURETY SHALL ELECT, WHETHER BEFORE OR AFTER DEMAND IS MADE, UNTIL ALL SUMS PAYABLE TO SURETY UNDER THIS AGREEMENT HAVE BEEN PAID IN FULL.

Initials of All Indemnitors

35. WARRANT AND WAIVER OF RIGHTS. BY SIGNING THIS AGREEMENT, EACH OF THE INDEMNITORS HEREBY REPRESENTS AND WARRANTS THAT EACH OF THEM HAS CAREFULLY READ AND UNDERSTANDS THIS AGREEMENT (INCLUDING, WITHOUT LIMITATION, THE CONFESSIONS SET FORTH HEREIN), AND HAS HAD OR HAS WAIVED THE OPPORTUNITY TO HAVE THE SAME REVIEWED BY LEGAL COUNSEL, AND TO CONFER WITH COUNSEL CONCERNING IT. EACH OF THE INDEMNITORS UNDERSTANDS THE SAME, AND AGREES TO THE PROVISIONS CONTAINED HEREIN, INCLUDING, WITHOUT LIMITATION, THE CONFESSION OF JUDGMENT PROVISIONS, AND UNDERSTANDS THAT A CONFESSION OF JUDGMENT CONSTITUTES A KNOWING, VOLUNTARY AND INTELLIGENT WAIVER OF RIGHTS INDEMNITOR OTHERWISE MIGHT HAVE TO PRIOR NOTICE AND A HEARING BEFORE A JUDGMENT IS ENTERED AGAINST INDEMNITOR, AND WHICH MAY RESULT IN A COURT JUDGMENT AGAINST INDEMNITOR WITHOUT PRIOR NOTICE OR HEARING, AND THAT OBLIGATIONS MAY BE COLLECTED FROM INDEMNITOR BY SURETY REGARDLESS OF ANY CLAIM INDEMNITOR MAY HAVE AGAINST SURETY OR OTHERWISE.

36. FOR OHIO RESIDENTS AND DOMICILIARIES:

WARNING - BY SIGNING THIS PAPER YOU GIVE UP YOUR RIGHT TO NOTICE AND COURT TRIAL. IF YOU DO NOT PAY ON TIME, A COURT JUDGMENT CAN BE TAKEN AGAINST YOU WITHOUT YOUR PRIOR KNOWLEDGE AND THE POWERS OF A COURT CAN BE USED TO COLLECT FROM YOU REGARDLESS OF ANY CLAIMS YOU MAY HAVE AGAINST THE CREDITOR, WHETHER FOR RETURNED GOODS, FAULTY GOODS, FAILURE ON HIS PART TO COMPLY WITH THE AGREEMENT OR ANY OTHER CAUSE.

37. FOR VIRGINIA RESIDENTS AND DOMICILIARIES:

IMPORTANT NOTICE: THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR, AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.

IN WITNESS WHEREOF, we have signed and sealed this Agreement to be effective the 9 day of September, 20 03.

Corporation or Limited Liability Company (Principal and Indemnitor):

ATTEST/WITNESS

[signature]

Sharon J. Stegall Secretary

Job Shops Company (SEAL) no seal

By: [signature]

Stephen R. Stegall, Jr. President

Corp.Tax ID# 42-1205354

State of Inc. or Formation Iowa

Corporate Address:

3812 Wolcott Avenue

Des Moines, IA 50321

WITNESS

Partnership (Principal and Indemnitor):

________________ (SEAL)

________________

By: ________________, Partner

________________

By: ________________, Partner

Tax ID# ________

State of Formation ________

Partnership Address:

WITNESS

Proprietorship (Principal and Indemnitor):

________________ (SEAL)

________________

By: ________________

Title: ________________

Tax ID# ________

State of Formation ________

Proprietorship Address:

WITNESS: [signature]

Individual Indemnitor

Signature: [signature]

Name: Stephen R. Stegall, Sr., Individually

Address: 3812 Wolcott Avenue

Des Moines, IA 50321

Indemnitor's S.S.# 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

WITNESS: ____________________

**Individual Indemnitor**

Signature: ____________________
Name: Sharon J. Stegall, individually
Address: 3812 Wolcott Ave.
Des Moines, IA
Indemnitor's S.S.# 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

WITNESS: ____________________

**Individual Indemnitor**

Signature: ____________________
Name: Stephen R. Stegall, Jr. , individually
Address: 2413 Boston Ave.
Des Moines, IA 50310
Indemnitor's S.S.# 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

WITNESS: ____________________

**Individual Indemnitor**

Signature: ____________________
Name: Lorrie A. Stegall , individually
Address: 2413 Boston Avenue
Des Moines, IA 50310
Indemnitor's S.S.# ____________________

CORPORATE/LLC ACKNOWLEDGEMENT(S)

State of IOWA County of POLK On this 9 day of September, 2003, personally came before me, ____ Stephen R. Stegall, Jr., President, of Job Shops Company to me known to be the persons who executed the foregoing and acknowledged that they had the authority to execute the same as the act of said corporation/company.

WILLIAM C. MOREHEAD
COMMISSION NO. 709227
MY COMMISSION EXPIRES
4-4-04

____________________ Seal
Notary Public
My Commission Expires 4-4-04

PARTNERSHIP ACKNOWLEDGEMENT(S)

State of Iowa County of Polk On this 9th day of September, 2003, personally came before me, Sharon J. Stegall, to me known, and stated that ___he (she) is (are) partner(s) in the firm of Job Shops Company and acknowledged that ___he/ she executed the foregoing instrument as the act of the said firm.

TORI BLONIGAN
Notarial Seal - State of Iowa
Commission Number 716638
My Commission Expires MAY 20, 2005

____________________ Seal
Notary Public
My Commission Expires May 20, 2005

WITNESS: [signature]

**Individual Indemnitor:**
Signature: [signature]
Name: Shawn Stegall, individually
Address: 7201 S.E. Fifth Street, Des Moines, IA 50315
Indemnitor's ss# 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

WITNESS: ____________________

**Individual Indemnitor:**
Signature: ____________________
Name: ____________________, individually
Address: ____________________
Indemnitor's ss# ____________________

WITNESS: ____________________

**Individual Indemnitor:**
Signature: ____________________
Name: ____________________, individually
Address: ____________________
Indemnitor's ss# ____________________

WITNESS: ____________________

**Individual Indemnitor:**
Signature: ____________________
Name: ____________________, individually
Address: ____________________
Indemnitor's ss# ____________________

WITNESS: ____________________

**Individual Indemnitor:**
Signature: ____________________
Name: ____________________, individually
Address: ____________________
Indemnitor's ss# ____________________

WITNESS: ____________________

**Individual Indemnitor:**
Signature: ____________________
Name: ____________________, individually
Address: ____________________
Indemnitor's ss# ____________________

WITNESS: ____________________

**Individual Indemnitor:**
Signature: ____________________
Name: ____________________, individually
Address: ____________________
Indemnitor's ss# ____________________

WITNESS: ____________________

**Individual Indemnitor:**
Signature: ____________________
Name: ____________________, individually
Address: ____________________
Indemnitor's ss# ____________________

## PROPRIETORSHIP ACKNOWLEDGEMENT(S)

State of ____________ County of ____________ On this ______ day of ______, ______, personally came before me, ______, Proprietor of ______ to me known, and known to me to be the individual(s) who executed the foregoing instrument, and acknowledged that ___he___ executed same.

______________ Seal
Notary Public
My Commission Expires ______________

## INDIVIDUAL ACKNOWLEDGEMENT(S)

State of Iowa County of Polk On this 9 day of September, 2003, personally came before me, Stephen R. Stegall, Sr. to me known, and known to me to be the individual(s) who executed the foregoing instrument, and acknowledged that ___he ✓ executed same.

Tori Blonigan Seal
Notary Public
My Commission Expires May 20th 2005

TORI BLONIGAN
Notarial Seal – State of Iowa
Commission Number 716638
My Commission Expires MAY 20, 2005

State of Iowa County of Polk On this 9 day of September, 2003, personally came before me, Sharon J. Stegall to me known, and known to me to be the individual(s) who executed the foregoing instrument, and acknowledged that ✓ he___ executed same. She

Tori Blonigan Seal
Notary Public
My Commission Expires May 20, 2005

TORI BLONIGAN
Notarial Seal – State of Iowa
Commission Number 716638
My Commission Expires MAY 20, 2005

State of IOWA County of POLK On this 9 day of September, 2003, personally came before me, Stephen R. Stegall, Jr. to me known, and known to me to be the individual(s) who executed the foregoing instrument, and acknowledged that ___he ✓ executed same.

[signature] Seal
Notary Public
My Commission Expires 4-4-04

NOTARIAL SEAL IOWA
WILLIAM C. MOREHEAD
COMMISSION NO. 709227
MY COMMISSION EXPIRES
4-4-04

State of IOWA County of POLK On this 9 day of September, 2003, personally came before me, Lorrie A. Stegall to me known, and known to me to be the individual(s) who executed the foregoing instrument, and acknowledged that ___he___ executed same.

[signature] Seal
Notary Public
My Commission Expires 4-4-04

NOTARIAL SEAL IOWA
WILLIAM C. MOREHEAD
COMMISSION NO. 709227
MY COMMISSION EXPIRES
4-4-04

INDIVIDUAL ACKNOWLEDGEMENT(S)

State of IOWA County of POLK
On this 9 day of September, 2003 personally came before me,
Shawn Stegall
to me known, and known to me to be the individual(s) who executed the foregoing instrument, and acknowledged that ____ he ____ executed same.

STACY JO FRY
Commission Number 723815
My Commission Expires
August 5, 2006

Notary Public Seal
My Commission Expires: 7/01/08

State of Iowa County of Polk
On this 10th day of September, ______ personally came before me,

to me known, and known to me to be the individual(s) who executed the foregoing instrument, and acknowledged that ____ he ____ executed same.

Notary Public Seal
My Commission Expires: ______

State of ______ County of ______
On this ______ day of ______, ______ personally came before me,

to me known, and known to me to be the individual(s) who executed the foregoing instrument, and acknowledged that ____ he ____ executed same.

Notary Public Seal
My Commission Expires: ______

State of ______ County of ______
On this ______ day of ______, ______ personally came before me,

to me known, and known to me to be the individual(s) who executed the foregoing instrument, and acknowledged that ____ he ____ executed same.

Notary Public Seal
My Commission Expires: ______

| ;FORMANCE BOND (See Instructions on reverse) 03-1314 | DATE BOND EXECUTED (Must be sam( later than date of contract) OCT 13, 2003 | FORM APPROVED OMB NO. 9000-0045 |
|---|---|---|

.ic reporting burden for this collection of information is estimated to average 25 minutes per response, including the time for reviewing instructions, searching ting data sources; gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this jen estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (VRS). Office of :eral Acquisition Policy, GSA, Washington, D.C. 20405; and to the Office of Management and Budget, Paperwork Reduction Project (9000-0045), Washington, :. 20503.

| :INCIPAL (Legal name and business address) | TYPE OF ORGANIZATION ("x" one) |
|---|---|
| ;OB SHOPS COMPANY<br>3812 WOLCOTT AVE.<br>DES MOINES IA 50321 | [ ] INDIVIDUAL [ ] PARTNERSHIP<br>[ ] JOINT VENTURE [x] CORPORATION<br>STATE OF INCORPORATION IA |

| ;URETY(IES) (Name and business address) | PENAL SUM OF BOND | | | |
|---|---|---|---|---|
| FIRST SEALORD SURETY, INC.<br>THIRTY THREE ROCK HILL ROAD<br>BALA CYNWYD PA 19004 | MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
| | 0 | 387 | 15 | 0 |
| | CONTRACT DATE | | CONTRACT NO. | |
| | SEP 29, 2003 | | 68950-02-C0027 | |

OBLIGATION:
We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.
CONDITIONS:
The principal has entered into the contract identified above.
THEREFORE:
The above obligation is void if the Principal—
(a)(1) Performs and fulfills all the undertakings, covenants, terms, conditions, and agreements of the contract during the original term of the contract and any extensions thereof that are granted by the Government, with or without notice to the Surety(ies), and during the life of any guaranty required under the contract, and (2) performs and fulfills all the undertakings, covenants, terms conditions, and agreements of any and all duly authorized modifications of the contract that hereafter are made. Notice of those modifications to the Surety(ies) are waived.
(b) Pays to the Government the full amount of the taxes imposed by the Government, if the said contract is subject to the Miller Act, (40 U.S.C. 270a-270e), which are collected, deducted, or withheld from wages paid by the Principal in Carrying out the construction contract with respect to which this bond is furnished.
WITNESS:
The Principal and Surety(ies) executed this performance bond and affixed their seals on the above date.

Job Shops Company — PRINCIPAL

| | | | | |
|---|---|---|---|---|
| SIGNATURE(S) | 1. (Seal) | 2. (Seal) | 3. (Seal) | Corporate Seal |
| NAME(S) & TITLE(S) (Typed) | 1. | 2. | 3. | |

INDIVIDUAL SURETY(IES)

| | | |
|---|---|---|
| SIGNATURE(S) | 1. (Seal) | 2. (Seal) |
| AME(S) 'ped) | 1. | 2. |

CORPORATE SURETY(IES)

| | | | | |
|---|---|---|---|---|
| AME & )DRESS | 1. FIRST SEALORD SURETY, INC. THIRTY THREE ROCK HILL BALA CYNWYD PA | STATE OF INC. PA | LIABILITY LIMIT $ 1,000,000 | Corporate Seal |
| NATURE(S) | 1. [signature] | 2. | | |
| E(S) & (S) ) | 1. RONALD F. BENTLEY ATTORNEY-IN-FACT | 2. | | |

01-152-8060 'ition not usable — EXPIRATION DATE: 12/31/92 — 25-107 — STANDARD FORM 25 (REV. 1-90) Prescribed by GSA - FAR (48 CFR) 53.228(b)

CORPORATE SURETY(IES) (Continu...

| | | | | STATE OF INC. | LIABILITY LIMIT | |
|---|---|---|---|---|---|---|
| | | 1. | | | $ | Corporate Seal |
| | ...URE(S) | 1. | 2. | | | |
| | ...E(S) & ...E(S) (...yped) | 1. | 2. | | | |
| ...ETY C | NAME & ADDRESS | 1. | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | | |
| SURETY D | NAME & ADDRESS | 1. | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | | |
| SURETY E | NAME & ADDRESS | 1. | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | | |
| SURETY F | NAME & ADDRESS | 1. | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | | |
| SURETY G | NAME & ADDRESS | 1. | | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | | |

| BOND PREMIUM ▶ | RATE PER THOUSAND | TOTAL |
|---|---|---|
| | $ FIRST SEA 18.75 | $ 7,257.00 |

INSTRUCTIONS

...his form is authorized for use in connection with Government ...racts. Any deviation from this form will require the written ...val of the Administrator of General Services.

... the full legal name and business address of the Principal in ...e designated "Principal" on the face of the form. An ... person shall sign the bond. Any person signing in a ...ive capacity (e.g., an attorney-in-fact) must furnish ... authority if that representative is not a member of the ...hip, or joint venture, or an officer of the corporation

...ns executing the bond as sureties must appear on ... the Treasury's list of the approved sureties and ... limitation listed therein. Where more than one ... involved, their names and addresses shall ... spaces (Surety A, Surety B, etc.) ... SURETY(IES)." In the space designated on the face of the form insert only the letter identification of the sureties.

(b) Where individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28), for each individual surety, shall accompany the bond. The Government may require the surety to furnish additional substantiating information concerning its financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the word "Corporate Seal", and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction requiring adhesive seals.

5. Type the name and title of each person signing this bond in appear in the space provided.

SURETY COMPANY ACKNOWLEDGMENT

STATE OF ILLINOIS)
COUNTY OF DUPAGE) ss:

On this 13TH day of OCTOBER in the year 2003, before me personally came RONALD F. BENTLEY to me known, who, being by me duly sworn, did depose and say that he resides in Naperville, Illinois; that he is the ATTORNEY-IN-FACT of the FIRST SEALORD SURETY, INC. the corporation described in and which executed the above instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the board of directors of said corporation, and that he signed his name thereto by like order.

"OFFICIAL SEAL"
Patricia A. Joseph
Notary Public, State of Illinois
My Commission Expires 04/23/05

Patricia A. Joseph
Notary Public

(When the principle is a corporation the following acknowledgment should be used)

STATE OF )
COUNTY OF ) ss:

On this _________ day of ______________ in the year ______, before me personally came ______________________, to me known, who being by me duly sworn, did depose and say that he/she resides in ________________________; that he/she is the _____________________ of the ________________________ the corporation described in and which executed the foregoing instrument; that he/she knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the board of directors of said corporation and that he/she signed his/her name thereto by like order.

______________________________
Notary Public

# BONDED PRINCIPAL DISCLOSURE
# NOTICE OF TERRORISM
# INSURANCE COVERAGE

You are hereby notified that under the Terrorism Risk Insurance Act of 2002, effective November 26, 2002, that you now have a right to purchase coverage for losses arising out of acts of terrorism, *as defined in Section 102(1) of the Act*: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property; or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Coverage under your existing policy may be affected as follows:

IN-FORCE TERRORISM **EXCLUSIONS, IF ANY,** FOR ACTS OF TERRORISM, *AS DEFINED IN THE ACT*, ALREADY CONTAINED IN YOUR BOND OR INCLUDED IN AN ENDORSEMENT ARE **NULLIFIED** AS OF NOVEMBER 26, 2002. YOU SHOULD KNOW THAT COVERAGE PROVIDED BY YOUR BOND FOR LOSSES CAUSED BY CERTIFIED ACTS OF TERRORISM, IF ANY, IS PARTIALLY REIMBURSED BY THE UNITED STATES UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. UNDER THIS FORMULA, THE UNITED STATES PAYS 90% OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THERE IS A CAP ON OUR LIABILITY TO PAY FOR SUCH LOSSES IF THE AGGREGATE AMOUNT OF INSURED LOSSES UNDER THE ACT EXCEEDS $100,000,000,000 DURING THE APPLICABLE PERIOD FOR ALL INSURED AND ALL INSURERS COMBINED. IN THAT CASE, WE WILL NOT BE LIABLE FOR THE PAYMENT OF ANY AMOUNT WHICH EXCEEDS THAT AGGREGATE AMOUNT OF $100,000,000,000. YOUR BOND SETS FORTH THE EXTENT AND SCOPE OF APPLICABLE COVERAGE. THERE IS CURRENTLY NO PREMIUM CHARGE FOR THIS COVERAGE, BUT FIRST SEALORD SURETY RESERVES THE RIGHT TO CHARGE PREMIUM FOR SUCH COVERAGE IN THE FUTURE.

# …rst Sealord Surety, Inc.

Power No. ORD-0154-03-06932

## Power of Attorney

**KNOW ALL MEN BY THESE PRESENTS:** That First Sealord Surety, Inc., a corporation of the Commonwealth of Pennsylvania, (hereinafter the "Company") has made, constituted and appointed, and by these presents does make, constitute and appoint

**Mark R. Malley and/or Ronald F. Bentley all of Naperville, Illinois**

its true and lawful Attorney-in-Fact, to make, execute and deliver on its behalf insurance policies, surety bonds, undertakings and other instruments of a similar nature as follows:

******** Not To Exceed Two Million Dollars ———————— ($2,000,000.00) ********

Such insurance policies, surety bonds, undertakings and instruments for said purposes, when duly executed by the aforesaid Attorney-in-Fact, shall be binding upon the said Corporation as fully and to the same extent as if signed by the duly authorized officers of the Corporation and sealed with its corporate seal; and all the acts of said Attorney-in-Fact, pursuant to the authority hereby given, are hereby ratified and confirmed.

This appointment is made pursuant to the following By-Laws which were duly adopted by the Board of Directors of the said Corporation on April 7, 2003 with all Amendments thereto and are still in full force and effect:

"Article XII - Policies, Bonds, Recognitions, Stipulations, Consents of Surety, Underwriting Undertakings, and Instruments Relating Thereto

**Section 12-1.** Insurance policies, bonds, recognitions, stipulations, consents of surety and underwriting undertakings of the Corporation, and releases, agreements and other writings relating in any way thereto or to any claim or loss thereunder, shall be signed in the name and on behalf of the Corporation: (a) by the Chairman of the Board, the President or a Vice President and by the Secretary or an Assistant Secretary; or (b) by an Attorney-in-Fact for the Corporation appointed and authorized by the Chairman of the Board, the President, or a Vice President to make such signature; or (c) by such other officers or representatives as the Board may from time to time determine. The seal of the Corporation shall, if appropriate, be affixed thereto by any such officer, Attorney-in-Fact or representative. The authority of such Attorney-in-Fact and Agents shall be as prescribed in the instrument evidencing their appointment. Any such appointment and all authority granted thereby may be revoked at any time by the Board of Directors or by any person empowered to make such appointment."

**IN WITNESS WHEREOF,** First Sealord Surety, Inc. has caused these presents to be duly signed and its corporate seal to be hereunto affixed and duly attested this 7th day of April, 2003.

First Sealord Surety, Inc.

(Seal) Attest: [signature] By: [signature]

Gary L. Bragg, Secretary — Keith Yam, Sr. Vice President

Commonwealth of Pennsylvania
County of Montgomery

On this 7th day of April, 2003, before me personally appeared Keith Yam, Sr. Vice President of First Sealord Surety, Inc., with whom I am personally acquainted, who, being by me duly sworn, said that he resides in the Commonwealth of Pennsylvania; that he is Sr. Vice President of First Sealord Surety, Inc., the corporation described in and which executed the foregoing instrument; that he knows the corporate seal of the said Corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said Corporation, and that he signed his name thereto as Sr. Vice President of said Corporation by like authority.

(Seal) [signature] Notary Public

Notarial Seal
Anthony T. Stewart, Notary Public
Lower Merion Twp., Montgomery County
My Commission Expires August 5, 2006
Member, Pennsylvania Association of Notaries

### CERTIFICATE

I, the undersigned Secretary of First Sealord Surety, Inc. do hereby certify that the original Power of Attorney of which the foregoing is a full, true and correct copy, is in full force and effect on the date of this Certificate and I do further certify that the Officer who executed the said Power of Attorney was one of the Officers authorized by the Board of Directors to appoint an Attorney-in-Fact as provided in Section 12-1 of the By-Laws of First Sealord Surety, Inc. This Certificate may be signed and sealed by facsimile under and by authority of the following provisions of the By-Laws of First Sealord Surety, Inc.:

"**Section 12-2.** The use of a printed facsimile of the corporate seal of the Corporation and of the signature of the Secretary or an Assistant Secretary on any certification of the correctness of a copy of an instrument executed by an authorized person pursuant to Article XII, Section 12-1 of the By-Laws appointing and authorizing an Attorney-in-Fact to sign in the name and on behalf of the Corporation surety bonds, underwriting undertakings, or other instruments described in said Section 12-1, with like effect as if such seal and such signature had been manually affixed and made."

In Witness Whereof, I have hereunto set my hand and affixed the corporate seal of the Corporation to these presents

this 13 day of OCTOBER, 2003

This power of attorney is void unless the Bond number is inserted in this paragraph (insert Bond # here: 03-1314 ), the bond number is the same number as on the original bond, and the bond number has been inserted by an officer or employee of the Company or by the agent.

…eal

[signature]
Gary L. Bragg, Secretary

…ord_Surety_POA.doc (Ed. 04/07/2003)

| PAYMENT BOND (See instructions on reverse) 03-1314 | DATE BOND EXECUTED (Must be same or later than date of contract) OCT 13, 2003 | FORM APPROVED OMB NO. 9000-0045 |
|---|---|---|

Public reporting burden for this collection of information is estimated to average 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (VRS), Office of Federal Acquisition Policy, GSA, Washington, D.C. 20405; and to the Office of Management and Budget, Paperwork Reduction Project (9000-0045), Washington, D.C. 20503.

| PRINCIPAL (Legal name and business address) | TYPE OF ORGANIZATION ("x" one) |
|---|---|
| JOB SHOPS COMPANY<br>3812 WOLCOTT AVE.<br>DES MOINES IA 50321 | ☐ INDIVIDUAL ☐ PARTNERSHIP<br>☐ JOINT VENTURE ☒ CORPORATION<br>STATE OF INCORPORATION: IA |

| SURETY(IES) (Name and business address) | PENAL SUM OF BOND | | | |
|---|---|---|---|---|
| | MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
| FIRST SEALORD SURETY, INC.<br>THIRTY THREE ROCK HILL ROAD<br>BALA CYNWYD PA 19004 | 0 | 387 | 15 | 0 |
| | CONTRACT DATE | | CONTRACT NO. | |
| | SEP 29, 2003 | | 68950-02-C0027 | |

OBLIGATION:

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

CONDITIONS:

The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

WITNESS:

The principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

**PRINCIPAL**

Job Shops Company

| | | | | |
|---|---|---|---|---|
| SIGNATURE(S) | 1. (Seal) | 2. (Seal) | 3. (Seal) | Corporate Seal |
| NAME(S) & TITLE(S) (Typed) | 1. | 2. | 3. | |

**INDIVIDUAL SURETY(IES)**

| | | |
|---|---|---|
| SIGNATURE(S) | 1. (Seal) | 2. (Seal) |
| NAME(S) (Typed) | 1. | 2. |

**CORPORATE SURETY(IES)**

| SURETY A | | | | |
|---|---|---|---|---|
| NAME & ADDRESS | 1. FIRST SEALORD SURETY, INC. THIRTY THREE ROCK HILL BALA CYNWYD PA | STATE OF INC. PA | LIABILITY LIMIT $ 1,000,000 | Corporate Seal |
| SIGNATURE(S) | 1. [signature] | 2. | | |
| NAME(S) & TITLE(S) (Typed) | 1. RONALD F. BENTLEY ATTORNEY-IN-FACT | 2. | | |

CORPORATE SURETY(IES) (Continued)

| | | | | | |
|---|---|---|---|---|---|
| SURETY B | NAME & ADDRESS | 1. | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| SURETY C | NAME & ADDRESS | 1. | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| SURETY D | NAME & ADDRESS | 1. | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| SURETY E | NAME & ADDRESS | 1. | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| SURETY F | NAME & ADDRESS | 1. | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |
| SURETY G | NAME & ADDRESS | 1. | STATE OF INC. | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | |

INSTRUCTIONS

1. This form, for the protection of persons supplying labor and material, is used when a payment bond is required under the Act of August 24, 1935, 49 Stat. 793 (40 U.S.C. 270a-270e). Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of the approved sureties and must act within the limitation listed therein. Where more than one corporate surety is involved, their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)." In the space designated "SURETY(IES)" on the face of the form insert only the letter identification of the sureties.

(b) Where individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28), for each individual surety, shall accompany the bond. The Government may require the surety to furnish additional substantiating information concerning its financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the word "Corporate Seal", and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction requiring adhesive seals.

5. Type the name and title of each person signing this bond in appear in the space provided.

SURETY COMPANY ACKNOWLEDGMENT

STATE OF ILLINOIS)
COUNTY OF DUPAGE) ss:

On this 13TH day of OCTOBER in the year 2003, before me personally came RONALD F. BENTLEY to me known, who, being by me duly sworn, did depose and say that he resides in Naperville, Illinois; that he is the ATTORNEY-IN-FACT of the FIRST SEALORD SURETY, INC. the corporation described in and which executed the above instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the board of directors of said corporation, and that he signed his name thereto by like order.

"OFFICIAL SEAL"
Patricia A. Joseph
Notary Public, State of Illinois
My Commission Expires 04/23/05

Patricia A. Joseph
Notary Public

(When the principle is a corporation the following acknowledgment should be used)

STATE OF )
COUNTY OF ) ss:

On this _________ day of _____________ in the year ______, before me personally came ____________________, to me known, who being by me duly sworn, did depose and say that he/she resides in ______________________; that he/she is the ____________________ of the ____________________ the corporation described in and which executed the foregoing instrument; that he/she knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the board of directors of said corporation and that he/she signed his/her name thereto by like order.

______________________________
Notary Public

# BONDED PRINCIPAL DISCLOSURE
# NOTICE OF TERRORISM
# INSURANCE COVERAGE

You are hereby notified that under the Terrorism Risk Insurance Act of 2002, effective November 26, 2002, that you now have a right to purchase coverage for losses arising out of acts of terrorism, *as defined in Section 102(1) of the Act*: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property; or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Coverage under your existing policy may be affected as follows:

IN-FORCE TERRORISM **EXCLUSIONS, IF ANY,** FOR ACTS OF TERRORISM, *AS DEFINED IN THE ACT*, ALREADY CONTAINED IN YOUR BOND OR INCLUDED IN AN ENDORSEMENT ARE **NULLIFIED** AS OF NOVEMBER 26, 2002. YOU SHOULD KNOW THAT COVERAGE PROVIDED BY YOUR BOND FOR LOSSES CAUSED BY CERTIFIED ACTS OF TERRORISM, IF ANY, IS PARTIALLY REIMBURSED BY THE UNITED STATES UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. UNDER THIS FORMULA, THE UNITED STATES PAYS 90% OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THERE IS A CAP ON OUR LIABILITY TO PAY FOR SUCH LOSSES IF THE AGGREGATE AMOUNT OF INSURED LOSSES UNDER THE ACT EXCEEDS $100,000,000,000 DURING THE APPLICABLE PERIOD FOR ALL INSURED AND ALL INSURERS COMBINED. IN THAT CASE, WE WILL NOT BE LIABLE FOR THE PAYMENT OF ANY AMOUNT WHICH EXCEEDS THAT AGGREGATE AMOUNT OF $100,000,000,000. YOUR BOND SETS FORTH THE EXTENT AND SCOPE OF APPLICABLE COVERAGE. THERE IS CURRENTLY NO PREMIUM CHARGE FOR THIS COVERAGE, BUT FIRST SEALORD SURETY RESERVES THE RIGHT TO CHARGE PREMIUM FOR SUCH COVERAGE IN THE FUTURE.

# First Sealord Surety, Inc.

Power No. ORD-0154-03-06933

## Power of Attorney

**KNOW ALL MEN BY THESE PRESENTS:** That First Sealord Surety, Inc., a corporation of the Commonwealth of Pennsylvania (hereinafter the "Company") has made, constituted and appointed, and by these presents does make, constitute and appoint

**Mark R. Malley and/or Ronald F. Bentley all of Naperville, Illinois**

its true and lawful Attorney-in-Fact, to make, execute and deliver on its behalf insurance policies, surety bonds, undertakings and other instruments of a similar nature as follows:

********* Not To Exceed Two Million Dollars-------------------($2,000,000.00)********

Such insurance policies, surety bonds, undertakings and instruments for said purposes, when duly executed by the aforesaid Attorney-in-Fact, shall be binding upon the said Corporation as fully and to the same extent as if signed by the duly authorized officers of the Corporation and sealed with its corporate seal; and all the acts of said Attorney-in-Fact, pursuant to the authority hereby given, are hereby ratified and confirmed.

This appointment is made pursuant to the following By-Laws which were duly adopted by the Board of Directors of the said Corporation on April 7, 2003 with all Amendments thereto and are still in full force and effect:

"Article XII. Policies, Bonds, Recognitions, Stipulations, Consents of Surety, Underwriting Undertakings, and Instruments Relating Thereto.

**Section 12-1.** Insurance policies, bonds, recognitions, stipulations, consents of surety and underwriting undertakings of the Corporation, and releases, agreements and other writings relating in any way thereto or to any claim or loss thereunder, shall be signed in the name and on behalf of the Corporation, (a) by the Chairman of the Board, the President or a Vice President, and by the Secretary or an Assistant Secretary; or (b) by an Attorney-in-Fact for the Corporation appointed and authorized by the Chairman of the Board, the President or a Vice President to make such signature; or (c) by such other officers or representatives as the Board may from time to time determine. The seal of the Corporation shall, if appropriate be affixed thereto by any such officer, Attorney-in-Fact or representative. The authority of such Attorney-in-Fact and Agents shall be as prescribed in the instrument evidencing their appointment. Any such appointment and all authority granted thereby may be revoked at any time by the Board of Directors or by any person empowered to make such appointment."

**IN WITNESS WHEREOF,** First Sealord Surety, Inc. has caused these presents to be duly signed and its corporate seal to be hereunto affixed and duly attested this 7th day of April, 2003.

First Sealord Surety, Inc.

(Seal) Attest: [signature] By: [signature]

Gary L. Bragg, Secretary — Keith Yam, Sr. Vice President

Commonwealth of Pennsylvania
County of Montgomery

On this 7th day of April, 2003, before me personally appeared Keith Yam, Sr. Vice President of First Sealord Surety, Inc., with whom I am personally acquainted, who, being by me duly sworn, said that he resides in the Commonwealth of Pennsylvania; that he is Sr. Vice President of First Sealord Surety, Inc., the corporation described in and which executed the foregoing instrument; that he knows the corporate seal of the said Corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by order of the Board of Directors of said Corporation, and that he signed his name thereto as Sr. Vice President of said Corporation by like authority.

(Seal) [signature] Notary Public

Notarial Seal
Anthony J. Stewart, Notary Public
Lower Merion Twp., Montgomery County
My Commission Expires August 5, 2006
Member, Pennsylvania Association of Notaries

**CERTIFICATE**

I, the undersigned Secretary of First Sealord Surety, Inc., do hereby certify that the original Power of Attorney of which the foregoing is a full, true and correct copy, is in full force and effect on the date of this Certificate and I do further certify that the Officer who executed the said Power of Attorney was one of the Officers authorized by the Board of Directors to appoint an Attorney-in-Fact as provided in Section 12-1 of the By-Laws of First Sealord Surety, Inc. This Certificate may be signed and sealed by facsimile under and by authority of the following provisions of the By-Laws of First Sealord Surety, Inc.

**Section 12-2.** The use of a printed facsimile of the corporate seal of the Corporation and of the signature of the Secretary or an Assistant Secretary on any certification of the correctness of a copy of an instrument executed by an authorized person pursuant to Article XII, Section 12-1 of the By-Laws appointing and authorizing an Attorney-in-Fact to sign in the name and on behalf of the Corporation surety bonds, underwriting undertakings, or other instruments described in said Section 12-1, with like effect as if such seal and such signature had been manually affixed and made.

In Witness Whereof, I have hereunto set my hand and affixed the corporate seal of the Corporation to these presents

this 13 day of OCTOBER, 2003

This power of attorney is void unless the Bond number is inserted in this paragraph (insert Bond # here 03-1314), the bond number is the same number as on the original bond, and the bond number has been inserted by an officer or employee of the Company or by the agent.

(seal) [signature]
Gary L. Bragg, Secretary